# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

**AMANDA FAYE NEIDLINGER,**

        **Plaintiff,**

**-vs-**                                                                               **Case No. 6:12-cv-1302-Orl-31DAB**

**COMMISSIONER OF SOCIAL**
**SECURITY,**

        **Defendant.**

_____

# REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

     This cause came on for consideration without oral argument on review of the Commissioner's decision to deny Plaintiff's application for disability benefits. For the reasons set forth herein, it is **respectfully recommended** that the decision of the Commissioner be **AFFIRMED.**

## Procedural History

     Plaintiff protectively filed applications for Disability Insurance Benefits and Supplemental Security Income, alleging disability beginning August 15, 2007 (R. 133-143). Her claims were denied initially and upon reconsideration. Plaintiff requested and received a hearing before an Administrative Law Judge ("the ALJ") and on September 14, 2010, the ALJ issued a decision finding Plaintiff to be not disabled (R. 9-24). The Appeals Council denied Plaintiff's request for review (R. 1-6), making the September 2010 decision the final decision of the Commissioner. This Complaint timely followed (Doc. 1), and the matter is now ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

## Nature of Claimed Disability

     Plaintiff alleges that she became unable to work on May 31, 2007, due to reactive airway disease, back pain, depression, obesity, insomnia, and sleep apnea (R. 36-38, 173, 178).

*Summary of Evidence Before the ALJ*

Plaintiff was born April 19, 1981 (R. 133), making her 26 years old on the alleged onset date (R. 19). She has a high school education (R. 185), and past relevant work as a billing clerk, grocery packer, cashier checker, short order cook, retail sales clerk, medical billing clerk, and library page (R. 18).

Plaintiff's pertinent medical history is set forth in detail in the ALJ's decision and, in the interests of privacy and brevity, is set forth in this opinion only as necessary to address Plaintiff's objections. In addition to the medical records of the treating providers, the record includes Plaintiff's testimony and that of a Vocational Expert, written forms and reports completed by Plaintiff, and opinions from non-examining consultants. By way of summary, the ALJ determined that Plaintiff had the severe impairments of obesity; shortness of breath; and lower back pain (R. 14), and the record supports this uncontested finding. The ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appx. 1 (R. 14-15), and found that Plaintiff had the residual functional capacity ("RFC") to perform "the full range of sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a)." (R. 15). Relying on the testimony of the Vocational Expert, the ALJ found that Plaintiff was capable of performing past relevant work as a medical billing clerk (R. 18), and alternatively found that there are other jobs existing in the national economy that she is also able to perform (R. 19). As such, Plaintiff was found to be not disabled (R. 19-20).

## Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – *i.e.,* the evidence must do more than merely

create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), *citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

"If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004). "We may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" 357 F.3d at 1240 n. 8 (internal quotation and citation omitted); *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

## Issues and Analysis

The ALJ must follow five steps in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, he is not disabled. 29 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent him from doing past relevant work, he is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering residual functional capacity, age, education, and past work) prevent him from doing other work that exists in the national economy, then he is disabled. 20 C.F.R. § 404.1520(f). The plaintiff bears the burden of persuasion through step 4, while at step 5 the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

Plaintiff claims that the ALJ failed to apply the correct legal standards in evaluating her sleep impairment, hypertension, and persistent bleeding at step two of this analysis. Plaintiff also claims that incorrect legal standards were applied in the evaluation of the medical opinion evidence, leading to an erroneous finding at step three.

*Step two*

Plaintiff contends that she suffered from sleep impairments, hypertension, and persistent uterine bleeding, but "the ALJ did not consider whether or not these were severe impairments" (Brief at p. 12).

An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. 20 C.F.R. § 404.1521.[1] An impairment or combination of impairments is "not severe" when medical or other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. 20 C.F.R. §§ 404.1521, 416.921. The ALJ has a duty to consider all impairments, both singly and in combination, when making an analysis of disability. 20 C.F.R. § § 404.1523 and 416.923.

Applied here, the ALJ did not include sleep impairment, hypertension, or vaginal bleeding as separate step two impairments (R. 15). While a remand is required where the record contains a diagnosis of a severe condition that the ALJ failed to consider properly, *Vega v. Comm'r of Social Security,* 265 F.3d 1214, 1219 (11th Cir. 2001), a mere diagnosis is insufficient to establish that an impairment is severe. *See Sellers v. Barnhart*, 246 F.Supp.2d 1201, 1211 (M.D. Ala. 2002). "The severity of a medically ascertained impairment must be measured in terms of its effect upon [a claimant's] ability to work and not simply in terms of deviation from purely medical standards of

---

[1]Basic work activities include physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, and handling, as well as capacities for seeing, hearing, and speaking; understanding, remembering and carrying out simple instructions; responding appropriately to supervisors and fellow employees and dealing with changes in the work setting; and the use of judgment. 20 C.F.R. § 404.1521(b).

bodily perfection or normality." *Id., citing McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986). A claimant has the burden of proof to provide substantial evidence establishing that a physical or mental impairment has more than a minimal effect on a claimant's ability to perform basic work activities. An impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience. *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984). Thus, a "[c]laimant need show only that his impairment is not so slight and its effect not so minimal." *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir.1986). Moreover, to satisfy the requirements of step two of the sequential evaluation process, the claimant's impairment(s) also must be severe for at least twelve consecutive months. *See* 20 C.F.R. §§ 416.905(a), 416.909, 416.920(a)(4)(ii); *Barnhart v. Walton*, 535 U.S. 212, 217 (2002). With respect to these three conditions, Plaintiff has not made that showing here.

Plaintiff contends that "sleep disorders, hypertension, and persistent uterine bleeding would cause a variety of non-exertional limitations" (Brief at p. 13) but fails to identify or cite to any record support for same. With respect to her sleep disorder, the ALJ discussed Plaintiff's apnea fully, noting her testimony that she uses a CPAP machine for sleeping (R. 16), and setting forth the medical evidence showing she was referred to a sleep specialist (R.16). As noted by the ALJ:

> In December 2008, the claimant saw sleep specialist Wahba Wahba, M.D., who ordered a sleep study, which showed evidence of obstructive sleep apnea of mild degree with associated mild hypoxemia. Dr. Wahba ordered CPAP titration, and the claimant was placed on CPAP therapy (Exhibit 6F.) By July 2009, the claimant reported using the CPAP therapy on a regular basis and tolerating it well, and in August 2009, she reported sleeping well at night and feeling rested in the morning (Exhibit 11F.)

(R. 17). This summary is supported by substantial evidence (R. 300-309, 346-348). As such, Plaintiff fails to show that her sleep apnea, which was diagnosed in December 2008 and treated successfully by August 2009, is a severe impairment lasting 12 consecutive months that interfered with her ability to perform basic work activities.

As for her hypertension, Plaintiff did not claim in her application (R. 178) nor at her hearing[2] that she has any functional limitations arising from this condition. While the medical records do show the diagnosis of hypertension, a mere diagnosis is not sufficient. Absent evidence of any limitations or other difficulties due to this impairment, Plaintiff has not shown that it is severe within the meaning of the step two analysis.

With respect to vaginal bleeding, gynecology records diagnosed dysfunctional uterine bleeding for a period of two months (R. 267-268, 270- 272, 294). An MRI of her abdomen and an MRI of her pelvis were negative (R. 275-76), and it appears that Plaintiff's bleeding was controlled by medication (R.267). While Plaintiff notes the diagnosis, she points to no evidence of limitations resulting from this short term condition.

The Plaintiff's burden at step two is light. However, "the finding of any severe impairment, whether or not it qualifies as a disability and whether or not it results from a single severe impairment or a combination of impairments that together qualify as severe, is enough to satisfy the requirement at step two." *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987); *see also Heatly v. Commissioner of Social Security*, 382 Fed. Appx. 823 (11th Cir. 2010). Here, consistent with the regulations and applicable law, the ALJ credited Plaintiff with other severe impairments at step two and proceeded forward with the sequential evaluation. Thus, even if any of these conditions should have been included as severe at step two, the omission is only reversible error if the ALJ subsequently failed to fully account for functional limitations arising from them. As Plaintiff has not identified any such functional limitations, remand is not warranted.

*Evaluating Medical Opinion Evidence*

Plaintiff contends that the ALJ erred in failing to state the weight he gave to the opinions of two treating physicians, and did not apply the correct legal standard in rejecting the opinion of a third.

---

[2] Plaintiff testified that she takes a high blood pressure pill, without any side effects (R. 31-32).

The Eleventh Circuit has held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor. *Winschel v. Commissioner of Social Security*, 631 F.3d 1176, 1178–79 (11th Cir. 2011) (citing 20 CRF §§ 404.1527(a)(2), 416.927(a)(2); *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987).)  Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. *See Lewis v. Callahan*, *supra; Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991); 20 C.F.R. § 404.1527(d). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2). The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory. *See Edwards*, 937 F.2d 580 (ALJ properly discounted treating physician's report where the physician was unsure of the accuracy of his findings and statements.)

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987). When a treating physician's opinion does not warrant *controlling* weight, the ALJ must nevertheless weigh the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) the nature and extent of the treatment relationship; 3) the medical evidence supporting the opinion; 4) consistency with the record as a whole; 5) specialization in the medical issues at issue; 6) other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(d). However, a treating physician's opinion is generally

entitled to more weight than a consulting physician's opinion. *See Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984); *see also* 20 C.F.R. § 404.1527(d)(2).

Plaintiff contends that the ALJ did not properly evaluate the opinions of her pulmonologist, Dr. Aneja, nor her sleep medicine specialist, Dr. Wahba. In support of this contention, Plaintiff states that Dr. Aneja and Dr. Wahba "gave the following opinions of nonexertional impairments:"

> Dr. Aneja diagnosed obstructive sleep apnea (Tr. 290-292, 351), hypertension (Tr. 290-293, 295, 352-355), "Hypertension which needs better control" (Tr. 290), and "Persistent Vaginal Bleeding" (Tr. 295). Dr. Aneja noted "inability to do any activity" (Tr. 294); "any little activity causes shortness of breath" (Tr. 291); "She had difficulty walking because of her morbid obesity" (Tr. 292); "She has mild shortness of breath with any activity" (Tr. 290); "Any little activity causes her shortness of breath. She is applying for disability." (Tr. 355); "any activity causes her short[ness] of breath" (Tr. 352); "Any little activity causes her shortness of breath" (Tr. 351). Dr. Wahba noted: "…she has difficulty maintaining sleep throughout the night and will occasionally wake up in the middle of the night and has difficulty going back to sleep" (Tr. 347). He diagnosed "Excessive daytime sleepiness" (Tr. 304-305, 348), sleep disordered breathing and suspected obstructive sleep apnea (Tr. 303); "Sleep disordered breathing of mild yet significant degree" (Tr. 304-305), obstructive sleep apnea (Tr. 346, 348), and sleep-maintenance insomnia (Tr. 346, 347).

(Brief at pp.15-16).

Plaintiff urges error in that the ALJ "did not state what weight he gave these opinions." (Brief at p. 16).

As stated above, under *Winschel*, a medical opinion is a statement from a physician that reflects judgments about the nature and severity of a claimant's impairments *See also Lawton v. Commissioner,* 431 Fed. Appx. 830, 831 (11th Cir. 2011) ("[t]he doctor's statement must reflect his judgment about the nature and severity of the claimant's impairments, including his symptoms, diagnosis, and prognosis, what he can still do despite his impairments, and his physical or mental restrictions.") While the above record excerpts include diagnostic impressions, which are properly included as opinion, the majority of the excerpts cited by Plaintiff are reports of *subjective* symptoms or history related by Plaintiff *to* the physician, and are not statements *from* a physician reflecting *his* judgment. As the ALJ found Plaintiff's allegations of disabling symptoms to be not fully credible (R.

15-18), and Plaintiff does not challenge that finding in this appeal, notations in treatment notes as to Plaintiff's reports of subjective symptoms are not "medical opinions" entitled to deference here. To the extent any of the excerpts include findings properly characterized as medical opinion, these records were fully evaluated by the ALJ in his determination.

As noted above, the ALJ summarized the records of the sleep specialist, Dr. Wahba, in detail, including the doctor's finding that, "by July 2009, the claimant reported using the CPAP therapy on a regular basis and tolerating it well, and in August 2009, she reported sleeping well at night and feeling rested in the morning" (R. 17). With respect to Dr. Aneja, the ALJ noted:

> The claimant began seeing pulmonologist Arjun Aneja, M.D., in June 2008. Dr. Aneja's notes indicate that the claimant underwent a pulmonary function study which showed mild obstructive and moderate restrictive lung disease. Dr. Aneja prescribed medication, including the use of a nebulizer and inhaler and advised the claimant to increase her activity level and decrease her calorie intake. The claimant followed up regularly with Dr. Aneja for adjustment of her medications. Dr. Aneja referred the claimant to a sleep specialist for symptoms suggestive of sleep apnea (Exhibit 5F.)
>
> \*\*\*
> While seeing Dr. Wahba, the claimant continued to follow up regularly with Dr. Aneja, her pulmonologist for adjustment and refills of her medications (Exhibits 8F; 12F).

(R. 16). After summarizing the treating notes of both physicians, the ALJ did, indeed, weigh these records, finding:

> The objective evidence of record and the claimant's treatment history do not fully support the degree of limitation she alleges with regard to her breathing difficulty. Both the claimant's pulmonologist and sleep specialist have consistently described her breathing obstruction and restriction as mild to moderate in nature. The undersigned acknowledges that the claimant experiences intermittent exacerbations of her breathing issues, but notes that her shortness of breath nevertheless has generally been characterized as "mild" by her pulmonologist. Further, the claimant appears to have responded well to the medications prescribed.

(R. 17). Although Plaintiff cites to *her* subjective reports to these doctors that she gets short of breath with any activity, the ALJ instead noted and credited the opinion of both of these physicians that Plaintiff's breathing restrictions were generally described as mild and she must *increase* her activity level (R. 17). This finding is amply supported by substantial evidence. *See e.g.,* R. 290, 292, 293,

321, 323 , 353, and 354 (all noting "mild shortness of breath"); R. 293 ("I advised her to increase her activity, watch her calorie"), R. 295 ("I advised her strongly that she needs to start increasing her activity and decrease calorie intake"), R. 303-5 ("Patient is encouraged to exercise regularly"), R. 323 ("Advised her to increase activity"), and R. 351 ("I advised her to increase her activity and lose weight").

Plaintiff's final contention is that the ALJ did not appropriately credit the opinion of her treating provider, Dr. Casimiro. The record reflects that Plaintiff presented to her family physician for 10 visits (R. 359) – starting January 15, 2008 through November 2009 (R. 277-285, 340-344).[3]

As noted by the ALJ (R. 16), Dr. Casimiro referred Plaintiff to a pulmonologist (Dr. Aneja), and she treated with that specialist for her breathing difficulties, as summarized above.

On August 24, 2009, Dr. Casimiro diagnosed morbid obesity, hypertension, sleep apnea, and restrictive lung disease (R. 333). The doctor opined that Plaintiff was being treated and her response to treatment was "stable" and "not worsening" (R. 334).[4] Plaintiff had "difficulty bending at waist due to morbid obesity" (R. 335). Dr. Casimiro did not complete the physical capacity questionnaire, but opined that Plaintiff is not employable, noting "she is barely able to walk to appts without getting sob [sic]" (R. 337). According to Dr. Casimiro, Plaintiff can lift less than ten pounds occasionally (R. 338).

On August 25, 2010, Dr. Casimiro completed another form and opined that Plaintiff could only sit two hours out of an eight-hour workday and stand/walk less than two hours in an eight-hour workday (R. 358-60). He felt she could "never" lift and carry less than ten pounds (R. 361), nor could

---

[3]Plaintiff's contention that she treated with Dr. Casimiro in 2010 is contradicted by the record. *See* R. 364, noting date of last office visit to be November 2009. The actual treatment note for November is not of record. The last treatment note is dated August 2009.

[4]Plaintiff's contention that the doctor opined that treatment was "not *working*" is assumed to be a typographical error.

she stoop, crouch, squat, climb ladder or stairs, or tolerate even low-stress jobs (R. 358-60). He did not list anything in response to a request to "Identify the clinical findings and objective signs" (R. 359), but noted "DOE" [5] as the reason for his conclusion that Plaintiff was not capable of even low stress jobs (R. 360).

Plaintiff argues that the ALJ failed to articulate the requisite good cause for discrediting this opinion. In his decision, the ALJ stated:

> In assessing the residual functional capacity, the undersigned has considered the opinion of the claimant's primary care doctor, Dr. Casimiro, essentially that the claimant is unable to work, even at the sedentary level, based primarily on her breathing difficulties (Exhibit 10F; 13F.) Social Security Ruling 96-2p provides that controlling weight must be given to a treating source's medical opinion if the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is "not inconsistent" with the other substantial evidence in the case record. The undersigned gives little weight to Dr. Casimiro's opinion, as it is not consistent with the objective evidence of record indicating that her breathing difficulties are mild to moderate in nature, or supported by the record as a whole. Rather, Dr. Casimiro's opinion appears to be based primarily on the claimant's subjective reports, which have been found to be less than fully credible.

(R. 18).

Thus, the ALJ found that the opinion is 1) inconsistent with the objective evidence of mild to moderate breathing difficulties; 2) not supported by the record, and 3) based on subjective complaints, which have been found to be not fully credible. These findings are supported by substantial evidence.

As is evident from the above summary, the limitations raised by Dr. Casimiro are, indeed, based primarily on her breathing difficulties. Importantly, Dr. Casimiro was not Plaintiff's primary source of treatment for this issue; rather, he referred Plaintiff to a pulmonologist, Dr. Aneja. The pulmonary function studies and Dr. Aneja's treatment notes, set forth above and in the ALJ's decision, do not describe disabling symptomology but reflect mild to moderate severity. The ALJ does not err in crediting the findings of a pulmonologist over a non-specialist in the field. *See* 20 C.F.R. §§ 404.1527(c)(5), 416.927(c)(5) ("We generally give more weight to the opinion of a specialist about

---

[5] It is believed that DOE means dyspnea (shortness of breath) on exertion.

medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist"). As such, a finding that Plaintiff cannot perform any work due to shortness of breath is inconsistent with this objective evidence.

Moreover, there is support for the ALJ's conclusion that Dr. Casimiro's opinions are not otherwise supported by the record and are based on subjective assertions which have been found to be not fully credible. In addition to the foregoing findings of mild to moderate difficulties, the ALJ noted that Plaintiff appears to have responded well to the medications prescribed and, rather than discouraging activity, Plaintiff's physicians have repeatedly directed her to exercise/increase her activity (R. 17). The ALJ also notes the opinions of state agency consultants, who found Plaintiff capable of a slightly reduced range of sedentary to light work (R. 18).[6] Also, as mentioned earlier, the ALJ found Plaintiff to be not fully credible and this finding has not been challenged on appeal.

As Plaintiff notes, there is evidence in the record to support a different conclusion than the one reached by the ALJ. This, however, is of no moment. The standard is not whether the evidence is unanimous, nor whether the greater weight of the evidence supports disability. Rather, "[i]f the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004). "We may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" 357 F.3d at 1240 n. 8 (internal quotation and citation omitted).

## Recommendation

The administrative decision was made in accordance with proper legal standards and is supported by substantial evidence. Therefore, it is **respectfully recommended** that the administrative

---

[6] Plaintiff correctly notes that one of these consultants was a Single Decision Maker, and not an acceptable medical source (R. 312-319). The Court agrees with the Commissioner, however, that no reversible error is present as the consultant opined that Plaintiff could perform a reduced range of light work but the ALJ limited Plaintiff to sedentary work (R. 16). As the ALJ adopted a RFC that was more restrictive than this consultant recommended, but was in line with the opinion of the other medical consultant (who is an acceptable medical source), any error is harmless. *See Castel v. Commissioner of Social Security,* 355 Fed. Appx. 260, 265 (11th Cir. 2009) (per curiam) (unpublished) (noting that an ALJ did not commit reversible error by mistaking a SDM's opinion for that of a physician when report merely confirmed other objective and acceptable evidence).

decision be **AFFIRMED.** If this recommendation is adopted, the Clerk should be directed to enter judgment accordingly, terminate all pending matters, and close the file.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on May 10, 2013.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Courtroom Deputy